UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ENGLUND,<br><br>    Petitioner,<br><br>v.<br><br>D.K. SISTO,<br><br>    Respondent. | No. CV 07-02535 CBM (HCx)<br><br>ORDER GRANTING PETITIONER'S WRIT FOR HABEAS CORPUS |

The matter before the Court[1] is Petitioner David Englund's (hereinafter, "Petitioner") Petition for a Writ for Habeas Corpus (hereinafter, "Petition") challenging the Board of Prison Terms's (hereinafter, "the Board") denial of parole at Petitioner's October 4, 2006, suitability hearing. The Court hereby **GRANTS** the Petition because the Board's denial was entirely predicated upon the offense Petitioner committed thirty years before.

## BACKGROUND

This Petition arises out of Petitioner's 1976 conviction for thirteen counts of criminal misconduct, including four counts of kidnapping to commit robbery with

---

[1] The Honorable Consuelo B. Marshall of the Central District of California sitting by designation. [Docket No. 13.] Petitioner filed the instant federal petition for a writ for habeas corpus in the Eastern District of California on November 27, 2007. This Petition was subsequently transferred to this Court on December 16, 2008. *Id.*

1

bodily harm pursuant to California Penal Code section 209, first degree robbery, assault with a deadly weapon with force likely to produce great bodily injury, and attempted murder, for which he was sentenced to seven years to life.

### I. Petitioner's Commitment Offense

Petitioner was raised in Oregon. His family life was normal until his parents divorced when he was 16, at which point his life became "scattered." The Record (hereinafter, "TR") at p. 6:2-11. Petitioner had "no direction": he started socializing with the wrong crowd, used drugs and alcohol, dropped out of school and eventually ran away from home. *Id.* at p. 9.

Petitioner was twenty years old when he ended up in San Diego and met Steve Caswell. *Id.* at pp. 11-12. The two traveled together to Lake Shasta in Shasta County. *Id.* at p. 12:21-23. Out of money for drugs and alcohol, they decided to rob people in the Lake Head, Antlers Campground where they were staying.

Four college students entered the campground on May 20, 1976. Petitioner and Caswell, who were drunk and under the influence of drugs, decided to rob these students. *Id.* at p. 15:14-27. Petitioner and Caswell approached the students while they were parking their vehicle. Petitioner brandished a gun at the students and ordered them out of the car. *Id.* at p. 13:18-23.

The students gave Petitioner and Caswell all their money. Afterwards, Petitioner and Caswell tied the students up to prevent them from escaping and calling for help. *Id.* at p. 14:11-20. Petitioner and Caswell ordered the students to disrobe and Caswell tied them up with twine, rope and the student's own clothing. *Id.* at pp. 14:24 to 15:2, 20:11-21.

Petitioner and Caswell decided to kill the students. Caswell struck one of the male students over the head with a gun and pushed him over an embankment. *Id.* at pp. 15:2-5, 46:3-5. Petitioner then walked over to the side of the

embankment and shot the male student at least twice. *Id.* at p. 15:5-15. The student survived.

Petitioner then shot the other three students, all of whom survived. *Id.* at p. 16:5-9. The first student he shot in the stomach. Then second student he shot in the chest. The third student he struck over the head several times with a gun and then shot twice, the first bullet barely missing the ear and second hitting the student's hands. *Id.* at p. 46:9-12.

Petitioner and Caswell fled the scene in the students' car. The duo were later apprehended by police and taken into custody.

## II. Denial Of Parole And Petition For Habeas Corpus

The Board found Petitioner unsuitable for release at his twelfth parole suitability hearing (hereinafter, "the Hearing") on October 4, 2006. Petitioner was fifty years old (50) and had served thirty years of his sentence.

Petitioner subsequently initiated state-court challenges to the Board's decision. First, on May 1, 2007, Petitioner filed a petition for a writ for habeas corpus in Shasta County Superior Court, asserting the same grounds for relief as in the instant Petition. The court denied the petition on June 25, 2007, in a written decision. [Shasta County Superior Court Order.] Next, Petitioner filed a petition for a writ for habeas corpus in the California Court of Appeal on July 20, 2007, which was summarily denied on August 20, 2007. [Court of Appeals Order.] Petitioner then filed a petitioner for a writ for habeas corpus with the California Supreme Court on August 13, 2007, which was summarily denied *en banc* on October 17, 2007. [California Supreme Court Order.] Petitioner now seeks habeas relief in this Court.

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner challenges the Board's denial of parole on due process grounds. He contends that the Board's October 4, 2006, decision violated his Fifth and

Fourteenth Amendment Rights to due process because it was based solely on the nature of his commitment offense.

## STANDARD OF REVIEW

An application for a writ for habeas corpus on behalf of a person in custody pursuant to a state court "judgment" "shall not be granted with respect to any ground adjudicated on the merits" in state court unless that "adjudication" either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established law" refers to the "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006).

A state court decision is "contrary to" the clearly established Supreme Court precedent if it: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or, (2) "confronts a set of facts that are materially indistinguishable from a decision of the [Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002). State court decisions that are not contrary to clearly established Supreme Court precedent warrants federal habeas relief "only if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or based on 'an *unreasonable* determination of the facts.'" *Id.* at 11; *see also Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) (an unreasonable application of federal law is distinct from an incorrect application).

A state court decision is an "unreasonable application of" Supreme Court precedent if the court "correctly identifie[d] the governing legal rule but applie[d] it unreasonably to the facts" of the case. *Penry v. Johnson*, 532 U.S. 782, 792

(2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)).

A reviewing federal court may "look through" "subsequent unexplained orders" to the last reasoned state court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Here, that is the Shasta County Superior Court decision.

## DISCUSSION

The gravamen of Petitioner's writ for habeas corpus is that the Board's decision was supported by constitutionally insufficient evidence. Specifically, Petitioner contends that the Board erred in basing its denial of parole exclusively on the immutable facts of his commitment offense. This Court agrees and finds that the Shasta County Superior Court's conclusion that Petitioner's commitment offense constituted some evidence to support the Board's decision was an unreasonable application of federal law.

**I. Legal Standard**

Because a California prisoner possesses a liberty interest in the grant of parole, *see, e.g., McQuillion v. Duncan*, 306 F.3d 895, 901-903 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole"), this court must evaluate "whether the procedures attendant upon th[e] deprivation" of that right "were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

    A.    <u>Some Evidence Standard</u>

In reviewing a writ for habeas corpus, the district court is not charged with determining, *post-hoc*, the petitioner's suitability for parole. Rather, the relevant inquiry is whether *some evidence* supports the Board's findings pursuant to California Penal Code section 3041(b).

A denial of parole violates due process only if it is not supported by "some evidence in the record" or is "otherwise arbitrary." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457 (1985). This standard is minimal:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is <u>any evidence</u> in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56. A denial of parole does not violate due process if it has some indicia of reliability. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005).

To assess whether a parole denial is based on "some evidence," a reviewing court must first look to the relevant state law to determine what findings are necessary to deem a prisoner unsuitable for parole. *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007). Then, it must assess the findings in the petitioner's case and determine whether the state court's decision that those findings were supported by "some evidence" was an unreasonable application of that standard. *Id.*

B.  <u>Factors Relevant to Determining An Inmate's Suitability For Parole</u>

In California, a petitioner is unsuitable for parole if he poses a *current threat* to public safety. *See also In re Lawrence*, 44 Cal. 4th 1181, 1205 (2008). Section 3041(b) states the Board:

> shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of the current to past convicted offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual.

To determine whether an inmate is a current threat to society, the Board must in turn "identify and weigh . . . [pre and post-conviction] factors relevant to predicting whether the inmate will able to live in society without committing additional antisocial acts." *In re Lawrence*, 44 Cal. 4th at 1205-1206. Additionally, title 15, section 2402, of the California Code of Regulations states that "all relevant, reliable information available to the panel shall be considered in determining" a lifetime prisoner who was convicted of attempted murder's suitability for parole. Cal. Code Regs., tit. 15, § 2402. Furthermore, "circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." *Id.*

Section 2402 sets forth a non-exhaustive list of factors which are relevant for determining whether an inmate is suitable for parole. Factors that weigh against parole include, *inter alia*, that a prisoner: (1) carried out the offense in an especially heinous, atrocious, or cruel manner – e.g., the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering, involved an attack on multiple victims, involved abuse or mutilation of the victim, or the motive for the crime was inexplicable or trivial in relation to the offense; (2) has a prior record of violence; (3) has an unstable social history; (4) has a lengthy history of severe mental problems related to the offense; or (5) has engaged in serious misconduct in prison. Cal. Code Regs., tit. 15, § 2402(c).

Factors that weigh in favor of parole, on the other hand, include, *inter alia*, whether the prisoner: (1) has shown signs of remorse; (2) has no juvenile record; (3) has a stable social history; (4) is of an age that reduces the probability of recidivism; (5) committed the crime as a result of significant stress; (6) has made realistic plans for release or has developed marketable skills; or (7) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release. Cal. Code Regs., tit. 15, § 2402(d).

The existence or nonexistence of any one factor is not dispositive. The key is how those factors interrelate and whether those factors provide "some evidence" the prisoner is *currently* dangerous to the public. *See also In re Lawrence*, 44 Cal. 4th at 1212; *see also Hayward v. Marshall*, 512 F.3d 536, 543 (9th Cir. 2008) (it is not "that a particular factor or factors indicating unsuitability exist but that a prisoner's release will unreasonably endanger public safety."). Accordingly, the inquiry is whether "some evidence indicates a parolee's release unreasonably endangers public safety." *Id.*

## II.   Analysis

Here, Petitioner was constitutionally deprived of his liberty interest in

parole because the only evidence to support the Board's decision denying him parole after thirty years in prison, and twelve parole hearings, was evidence relating to the nature of his commitment offense. Guided by the Ninth Circuit's decision in *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), this Court holds that facts relating to the offense the inmate committed thirty years before his parole hearing do not constitute *some evidence* of his current dangerousness and cannot support a finding that he is unsuitable for parole.

In the following sections, the Court first addresses the evidence the Board identified as weighing in favor of paroling Petitioner, then considers the evidence the Board cited in support of its denial of parole, and finally concludes that the Shasta County Superior Court's affirmation of the Board's denial was an unreasonable application of federal law.

  A. <u>Pre and Post-Conviction Evidence Weighing In Favor Of Parole</u>

With respect to the California Code of Regulations, title 15, section 2402 factors relating to an inmate's current dangerousness, the Board considered the following pre and post conviction evidence presented at the Hearing:

*Pre-Conviction Record for Violence* – Petitioner had previous convictions for grand theft, second degree theft and reckless endangering. TR at p. 55:5-7.

*Pre-Conviction and Current Social History* – Petitioner's parents divorced when he was 16. His mother is alive. His father is deceased. *Id.* at p. 7:5.

One of his sisters died in 1997 from alcohol poisoning. *Id.* at p. 7:16-25. His older brother fought in the Vietnam war. *Id.* at p. 9.

Petitioner is close with his younger sister who lives in South Lake Tahoe; she comes and visits him in prison. *Id.* at pp. 7-9. His oldest sister lives in Medford, Oregon; she and her husband are unable to come to California to visit Petitioner but they write to him and speak with him on the phone. *Id.*

*Record of Misconduct in Prison* – At the time of the Hearing, Petitioner had

been disciplinary free since 1988 (eighteen years), and the Board commended him for conforming to prison rules. *Id.* at pp. 21:6-15, 29:20 to 30:17.

Additionally, the Board noted that Petitioner had the lowest "classification score", which is the measure of an inmate's risk for misbehavior, a life prisoner can have. Petitioner's score means the prison system considers him amongst the least dangerous of life prisoners. *Id.* at p. 21:8-9.

*Petitioner's Remorse* – The Board heard testimony from Petitioner that he was remorseful for his actions. Petitioner testified that he had spent the past thirty years thinking about what he did; he has been in and out of one-on-one therapy and has taken responsibility for his actions. He told the Board that he was "sickened" by what he did, and that at fifty (50) years old he was a different man from the "kid" who committed this crime. *Id.* at pp. 18-19.

*Psychiatric Report* - The Board also considered Petitioner's psychiatric report, completed less than two months before the suitability hearing. With respect to Petitioner's violence level, the doctor reported that Petitioner had over the past thirty years:

> developed significant insight and understanding of the factors that led up the commitment offense . . . [and] made appropriate personal social behavior adjustments . . . there's a high probability that [his] current risk is significantly lower than that of other inmates at Solano [Prison] . . . [and] in the average range when compared to that individual who has committed a similar event and has had a successful parole in the community.

*Id.* at pp. 29:17-20, 30:27 to 31:7. The Board found the report favorable. *Id.*

*Engagement in Institutional Programs and Self Help* - The Board found that Petitioner had taken advantage of self-help programs in prison. Petitioner testified that he went to Narcotics Anonymous (N.A.) and Alcoholics Anonymous (A.A.) often and had last attended a meeting "about two, three weeks ago." *Id.* at p. 23. The Board also heard evidence that Petitioner had taken stress management course, and had completed both a relationship awareness course and the Men's Violence Prevention Program where he learned anger management skills. *Id.* at

pp. 25:21, 27:19-23.

*Juvenile Convictions* - Petitioner had no juvenile convictions[2], though he was given probation as a juvenile for stealing a typewriter. *Id.* at p.5:2-11.

*Of an Age that Reduces Recidivism* – At the time of the Hearing, Petitioner was 50 years old, an age that reduces the likelihood of recidivism.

*Realistic Plans for Post-Release* – The Board heard evidence that if Petitioner were released,[3] he would reside in South Lake Tahoe, with his younger sister. *Id.* at p. 34. The Board read a letter from Petitioner's sister in which she wrote that she manages the "Beverly Motel" in South Lake Tahoe and had offered Petitioner a job at the motel as a maintenance man. *Id.* at pp. 34-35, 36:19 to 37:7. Petitioner's sister also wrote that her home was a drug and alcohol free environment. *Id.* at p. 37:11-19.

One of the commissioners questioned whether Petitioner would be tempted by the "party lifestyle" in South Lake. *See id.* Petitioner testified that he could resist the temptation and would fill his time with outdoor hobbies such as working out and running. *Id.* at p. 36:10-15. Petitioner also told the Board that he had plans to continue attending A.A. and N.A. post-release. He told the Board that he had researched N.A. meetings in the Tahoe area and had obtained a list of people to contact in case he needs help staying sober. *Id.* at p. 42:18-25.

*Marketable Skills*- The Board acknowledged that Petitioner had completed his G.E.D. in prison and had certificates in the following vocations: dry cleaning, drywall, mill and cabinets. *Id.* at pp. 9:3-4, 21:26 to 22:1. Petitioner also took courses in sheet metal and welding. *Id.* at p. 22:2-10. Petitioner worked in prison as a building porter and had work assignments in the shoe factory and the textile factory. *Id.* at p. 55:13-14.

---

[2] Petitioner appeared twice in juvenile court as a runaway. In California, being a runaway is a status offense, not a criminal offense. *See In re Michael G*, 44 Cal. 3d 283 (1988).

[3] At Petitioner's previous parole hearing, he was advised to improve his plans for post-release. TR at p. 8.

At the end of the Hearing, the Board found that Petitioner had: multiple vocations, viable plans for post-release, programmed well in self-help and therapy, internalized the twelve steps of N.A. and A.A., been disciplinary free for most of his time in prison and been classified by the prison psychiatrist as a low danger threat. *Id.* at pp. 56-57. The Board told Petitioner that "you've done a massive amount of work in here, and you're to be commended for that." *Id.* at p. 57:9-10.

### B.  Denial Based On The Severity Of The Commitment Offense

The foregoing notwithstanding, the Board denied Petitioner parole. At the end of the Hearing Commissioner Bryson stated that although "it would appear to this panel unanimously that you would be a good candidate for parole at some point, [sic] we both agree that today just isn't the day." *Id.* at p. 57:17-20. The Board stated *twice* on the record that its denial was "*based on the gravity of this offense alone.*" *Id.* at pp. 55:4, 57:13-14 (emphasis added). The Board found that the fact that "the offense was carried out in an especially cruel and callous manner" was sufficient reason alone[4] to find Petitioner unsuitable for release. *Id.* at p. 53:12-14.

The Shasta County Superior Court agreed, concluding that "the Board of Parole Hearings proceeds lawfully when it finds an inmate unsuitable for parole because of the circumstances of the commitment offense indicate exceptional callousness and cruelty with trivial provocation." Shasta County Superior Court Decision at p. 1. This Court, however, disagrees. The Shasta County Superior Court did not consider either the amount of time Petitioner had spent in prison or his rehabilitation efforts when it held that the Board may base a denial of parole on the nature of the commitment offense alone.

---

[4] The Board acknowledged it was basing its decision on the immutable facts of Petitioner's commitment offense. One commissioner stated, "The crime, you're right, will never change. However, because of the severity of it, I still want you to think about [the] victims . . ." TR at p. 58:7-10.

11

### 1. *The Effect of Biggs v. Terhune*

The Ninth Circuit has expressed a general preference that denials of parole *not be based solely* on pre-conviction factors such as the petitioner's pre-conviction criminal history or his commitment offense. *See Irons*, 505 F.3d at 852. A denial of parole predicated on a prisoner's commitment offense is proper "only where the Board can 'point to factors beyond the minimum elements" of the commitment offense that demonstrate that at the time of the suitability hearing the inmate presents a current danger to society. *Id.* Factors beyond the minimum elements of the commitment offense "include . . . that '[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.'" *Id.*

Even with such an additional finding, a denial of parole based on the Board's continued reliance on a pre-conviction factor, such as the facts of and the heinousness of the commitment offense, will eventually violate due process. *See Biggs v. Terhune*, 334 F.3d at 915. The petitioner in *Biggs* was a California inmate who had served fourteen years of a life sentence for first degree murder when he was denied parole. Although the Ninth Circuit upheld the Board's denial which was based solely on the nature of Biggs's commitment offense and his conduct prior to imprisonment, it warned that:

> should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.

*Id.* at 916-917.

The Ninth Circuit had the opportunity to revisit *Biggs* in *Irons v. Carey*, 505 F.3d 846. At the time of his parole hearing, Irons had served sixteen years of his life sentence for second degree murder. Although the Ninth Circuit again upheld

the Board's denial of parole, it reiterated and added force to its reasoning in *Biggs*. The Court opined that "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, *will* at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons*, 505 F.3d at 854 (emphasis added).

The rule that thus emerges from these cases is that a state's continued reliance on pre-conviction factors such as the nature of the commitment offense to deny an inmate who has been sentenced to life parole will eventually result in a due process violation if the sole justification for the denial is the nature of the commitment offense and the prisoner's behavior in custody is otherwise exemplary and substantially demonstrates rehabilitation. *See Marshall*, 512 F.3d at 545; *see also Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *see also Irons*, 505 F.3d at 854; *see also Biggs*, 334 F.3d at 917. As the Ninth Circuit reasoned in *Biggs* and *Irons*, there comes a point when denial of parole must be based on something more than pre-conviction considerations; for an individual sentenced to life, that point may come sometime after his sixteenth year in prison. *See Biggs*, 334 F.3d at 915-917; *see also Irons*, 505 F.3d at 854. Until that time, however, evidence that the commitment offense was heinous, atrocious or cruel, pursuant to California Code of Regulations, title 15, section 2402(c), may itself justify a denial of early release.

### 2. *The Shasta County Superior Court Decision Was An Unreasonable Application Of Federal Law*

Although the Ninth Circuit has never applied *Biggs* and *Irons* to invalidate a state court judgment upholding a parole board's denial of parole, this Petition presents this Court with an opportunity to do so.

In concluding that the Board "proceeds lawfully when it finds an inmate unsuitable for parole because the circumstances of the commitment offense indicate exceptional callousness and cruelty with trivial provocation", the Shasta

County Superior Court failed to heed federal case law which specifically cautions that it is unconstitutional to continue to rely only on the circumstances of a commitment offense – even an exceptionally callous or heinous one – to deny an inmate parole. *See Irons*, 505 F.3d at 853; *see also Biggs*, 334 F.3d at 917. Whereas the Board could have previously used Petitioner's commitment offense as justification for denying him release, the legitimacy of that justification erodes over time.

This is because at some point in the inmate's incarceration, the focus shifts from what he *did* to what he is now *doing*. *See Biggs*, 334 F.3d at 916. Neither the *Irons* court nor the *Biggs* court offered a formula for when denials based on immutable characteristics such as an inmate's commitment offense constitute due process violations, but their implication is that as the inmate approaches his third decade in prison, and has otherwise exhibited exemplary behavior, he should be released absent other countervailing evidence that his current behavior make him a present threat to society.

Such is the case. Petitioner is the type of person the Ninth Circuit envisioned in *Biggs* and *Iron* whose liberty interest in parole could be at risk. Petitioner had already served <u>thirty years</u> of a life sentence, nearly double the amount of time of either Biggs or Irons, when the Board denied him parole. As in *Biggs* and *Irons*, the Board considered Petitioner a "model inmate." *See Biggs*, 334 F.3d at 912. In fact, the Board *admitted on the record* that the section 2042 post-conviction factors weighed in favor of paroling Petitioner. It is significant that in denying Petitioner parole for one year, the Board did not advise Petitioner of what he could do to improve his chances of being paroled at his next parole suitability hearing.

In this regard, Petitioner has done everything California law requires him to do to gain parole after thirty years. Cal. Code Regs., tit. 15, § 2402. According to

the Board, the only thing that prevents Petitioner from being paroled is his commitment offense; if the immutable facts of Petitioner's commitment are dispositive, it is not unreasonable to conclude that the Board will again deny Petitioner parole the next time it considers his suitability for parole. This is precisely the scenario Ninth Circuit jurisprudence has sought to avoid. *See Marshall*, 512 F.3d at 545; *see also Sass*, 461 F.3d at 1129; *see also Irons*, 505 F.3d at 854; *see also Biggs*, 334 F.3d at 917.

Because Prisoner's behavior in custody for the past twenty years has been exemplary and substantially demonstrates rehabilitation, the Shasta County Superior Court's affirmation of the Board's decision thirty years after the commitment offense to deny Petitioner parole solely because of the nature of that offense was an unreasonable application of federal law.

## CONCLUSION

For the reasons set forth above, this Court finds that the Board of Prison Term's October 4, 2006, conclusion that Petitioner was unsuitable for parole violated Petitioner's right to due process and that the Shasta County Superior Court's Order affirming that denial constituted an unreasonable application of clearly established federal law. Accordingly, Habeas relief is warranted and the Court **GRANTS the Petition. IT IS HEREBY ORDERD that if Petitioner is incarcerated at this time, Respondent shall, within ten (10) days of this Order release Petitioner from custody.**

IT IS SO ORDERED.

DATED: October 23, 2009



By _____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE